# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DANIEL McCARTHY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 05 C 4321 |
| SHERIFF JOHN ZARUBA, et al. | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, a former inmate at the DuPage County Jail, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, the sheriff and a staff physician at the jail, violated the plaintiff's constitutional rights by acting with deliberate indifference to his serious medical needs. More specifically, the plaintiff alleges that he was denied treatment and medication for congestive heart failure and for complications of that condition which affected his lower legs and feet. This matter is before the court for consideration of defendant Zaruba's renewed motion for summary judgment. For the reasons stated in this order, the motion is granted.

## SUMMARY JUDGMENT STANDARDS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the

court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000).

However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Sarver v. Experian Information Solutions*, 390 F.3d 969, 970 (7th Cir. 2004) (citations omitted).

## FACTS

The defendant filed a statement of uncontested material facts pursuant to Local Rule 56.1 (N.D. Ill.). Together with his summary judgment motion, the defendant served on the plaintiff the required notice under Local Rule 56.2, advising the plaintiff what he needed to do to contest the motion, and specifically what he needed to do to dispute the defendant's statement of uncontested facts. Despite this, the plaintiff has not submitted a statement of contested facts; he simply elaborates on certain facts without citations to the record or states additional facts in his opposing brief, without pointing to evidence in the record that substantiates his version of the facts. But unsupported statements in a brief are not evidence and cannot be given any weight. *See, e.g., Johnson v. Spiegel, Inc.*, No. 02 C 0680, 2002 WL 1880137, at *4 (N.D. Ill. Aug. 15, 2002) (Pallmeyer, J.), citing *In the Matter of Morris Paint and Varnish Co.*, 773 F.2d 130, 134 (7th Cir. 1985). Furthermore, hearsay is barred by Fed. R. Evid. 802.

2

The plaintiff's failure to respond to the defendant's statements of material facts as directed warrants disregard of any contrary assertions he makes in his opposing brief. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003):

> Local Rule 56.1's enforcement provision provides that when a responding party's statement fails to controvert the facts as set forth in the moving party's statement in the manner dictated by the rule, those facts shall be deemed admitted for purposes of the motion. . . . We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission. *See, e.g., Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 689 (7th Cir. 2000). A district court is not required to "wade through improper denials and legal argument in search of a genuinely disputed fact." *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). And a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material. *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993).

Nevertheless, because the plaintiff is proceeding *pro se*, the court will consider the factual assertions he makes in his responsive brief, but only to the extent that the plaintiff could properly testify about the matters asserted at trial. Affidavits must concern facts about which the affiant is competent to testify, must be based on personal knowledge, and must set forth such facts as would be admissible in evidence. Fed. R. Civ. P. 56(e). A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Fed. R. Evid. 602. It should additionally be noted that the validity of medical records and entries in the medical records cannot be disputed in the absence of any contrary evidence. *Moss v. Morman*, No. 99 C 3571, 2001 WL 1491183, at *4 (N.D. Ill. Nov. 26, 2001) (Andersen, J.) The court therefore finds that the following facts, gathered from the defendant's statements of facts, the plaintiff's medical records, and his deposition testimony, are undisputed for purposes of this motion:

The plaintiff was incarcerated at the DuPage County Jail on two occasions during the time period in question. (Defendant's Exhibit B, Deposition of Daniel McCarthy, at pp. 8-9.) The

3

plaintiff was held at the jail from October 29, 2003, through November 21, 2003, and again from December 6, 2003, until on or about October 7, 2004. (*Id.*)

During his medical screening on the date the plaintiff was first booked, he reported to officials that he suffered from congestive heart failure and was taking multiple medications. (*Id.*, pp. 12-13.) A day or two later, the plaintiff was placed in the jail's medical wing. (*Id.*, p. 15.) The plaintiff remained in the medical pod for the rest of his first incarceration. (*Id.*, p. 23.)

For the first two or three days of his first incarceration, the plaintiff received no medication. (*Id.*, pp. 20, 21, 22.) On November 3, 2003, the jail medical staff contacted the plaintiff's pharmacist and verified his prescriptions for Accupril, Aldactone, Bumex or Bumetadine, Synthroid, and Digitek. (Defendant's Exhibit E, "Intervention Notes.") The plaintiff received his prescribed medications (or substitute medicines) from that day forward for the following three weeks. (Plaintiff's Deposition, pp. 17-19.) During that three-week period, the plaintiff was seen by medical professionals "regularly," "daily." (*Id.* at p. 24.) From what he could recall, "they were taking me out at one time every day and going down to see the doctor for one reason or another. They were looking at me pretty close." (*Id.*)

The plaintiff was released from custody on or about November 21, 2003.

The plaintiff returned to the DuPage County Jail for the second time on December 6, 2003. (Plaintiff's Deposition, p. 30.) He was examined by medical staff within two days of his arrival and he was placed, once again, in the jail's medical unit. (*Id.*, p. 37.) The plaintiff was housed in the medical unit for the first six months of his ten-month, second stint at the jail. (*Id.*, pp. 37, 38.) During those six months, he saw nurses daily and other members of the medical staff "at least once a month . . . sometimes more," if he requested to see a physician. (*Id.* pp. 38-39.)

4

According to the plaintiff, one of the complications of congestive failure is edema (swelling) of his lower legs and feet. (*Id.*, p. 26.) Prior to his incarceration, the plaintiff took Lasix and/or Bumetanide (diuretics) to combat the condition. (*Id.*, pp. 19, 20, 53.) [Diuretics increase urination and decrease water retention.]

Within one to three days of his arrival at the jail, the plaintiff had a consultation with Dr. Guzman at the jail. (*Id.*, p. 52.) [Guzman is the second defendant in this case but he did not join the motion for summary judgment.] When the plaintiff showed Guzman his swollen legs and discolored skin, Guzman "made a prescription right then to get me some medication for that." (*Id.*, p. 53.) Within a week, the plaintiff's leg was "quite a bit better." (*Id.*, p. 57.) Dr. Guzman prescribed Eucerin (a medicated skin cream) for the plaintiff's legs at the next appointment. (*Id.*, p. 55.)

After the first two weeks of the plaintiff's incarceration, his oral medications were administered "pretty steady . . . and if they ran out . . . I usually generally had it the next day." (*Id.*, p. 59.) On a routine and regular basis from December 6, 2003, until about October 7, 2004, the plaintiff received medications that included Neosporin, Bumex, Potassium Chloride, Lasix, Triamcinolone cream, Aldactone, Digoxin, Synthroid, ASA EC, Coreg, Lisinopril, Eucerin cream, Beneryl, triple antiseptic ointment, Motrin, Bacitracin, Keflex, Sedactone, and hydrocortisone cream. The plaintiff's blood pressure was monitored regularly. The plaintiff was treated with large bandage dressings on at least three occasions. (Defendant's Exhibit F, Medication Administration Record for Daniel McCarthy.) The plaintiff concedes that, "With the Bumetanide, with any of the medications, being off it for a day or two isn't that big of a deal. It's when you're off it for three or four days or a week that it starts to be, you start to notice the effects of it." (Plaintiff's Deposition,

p. 59.) But there were no long-term denials of oral medications. (*Id.*, p. 60.) The plaintiff took issue only with lapses in receiving topical ointments for his edema. (*Id.*)

When the plaintiff complained that the quantity of Eucerin cream furnished him once a day was insufficient, he was furnished Eucerin twice a day. (*Id.*, p. 61.)

From about February 28, 2004, until March 6, 2004 (about a week), the plaintiff received no Eucerin cream. Some staffers told him that the facility was "out" of the cream and that it been reordered; others told him that his prescription had lapsed and that it was too expensive to reorder. (*Id.*, pp. 61-64.) The plaintiff met with Dr. Guzman on March 6th, Guzman allegedly explained, "Look, we've done all we can. This is expensive stuff and we've done all we can. It's a problem you're going to have to live with. . . . It's a problem that can't be cured." (*Id.*, pp. 64-65.)

Guzman's refusal to prescribe more Eucerin cream prompted the plaintiff to send a letter to jail administrators. (*Id.*, p. 66.) In response to the letter, which was treated as a grievance, the plaintiff again began receiving Eucerin cream two or three days later. (*Id.*, p. 67.) At first, he was given a cup of cream twice a day, then the medical staff began giving him the whole container. (*Id.*) And they were "pretty good" if the plaintiff ran low, reordering the cream when he informed him that he needed more, although sometimes he would have to wait a week or so. (*Id.*, p. 68.) When the facility had no Eucerin in stock, they would sometimes give him antibiotic ointments instead. (*Id.*)

At the end of August 2004, the facility once again stopped providing Eucerin cream. (*Id.*, p. 69.) After about a week or two of going without the medicated cream, the plaintiff's legs began to get "really raw," cracked and dry and bleeding. (*Id.*, pp. 70-71.)

On an unspecified date in September, the plaintiff showed his leg to a lieutenant. (*Id.*, pp. 74-75.) The lieutenant summoned a nurse, who examined his leg and commented that she did not understand why he was not getting his medication. (*Id.*, p. 75.) The nurse provided the plaintiff with hydrocortisone cream and promised to investigate the matter. (*Id.*)

The plaintiff filed another grievance regarding the denial of Eucerin cream. (*Id.*, p. 76.) A jail official met with the plaintiff and, shortly thereafter, he began receiving the medication once again. (*Id.*)

Neither the plaintiff nor his wife ever had any contact with defendant Zaruba regarding any matter during either term of the plaintiff's confinement at the DuPage County Jail. (Defendant's Exhibit G, Affidavit of John Zaruba, ¶¶ 5 and 6.) The plaintiff never spoke with Zaruba regarding the administration of medicine; in fact, he never spoke to Zaruba, period, while he was incarcerated. (Plaintiff's Deposition, pp. 51-52, 89.) The plaintiff never had any conversation with anyone from the Sheriff's Office concerning his medical care. (*Id.*, p. 95.) The plaintiff does not independently know for certain whether someone from his attorney's firm ever contacted the Sheriff's Department regarding the plaintiff's medical needs, although he was told that someone had. (*Id.*, pp. 91-93.) No court ever ordered Zaruba to furnish the plaintiff with "all required medications," as alleged in the complaint. (Zaruba Affidavit, ¶ 7.) Zaruba had no personal involvement in the provision of the plaintiff's medical care. (*Id.*, ¶ 8.)

## DISCUSSION

No material facts are in dispute and the court finds that the defendant is entitled to judgment as a matter of law. Even viewing the record in the light most favorable to the plaintiff, no reasonable

person could conclude that the defendant acted with deliberate indifference to the plaintiff's serious medical needs.

It is well established that the Due Process Clause prohibits deliberate indifference to the serious medical needs of a pretrial detainee. *Chapman v. Keltner*, 241 F. 3d 842, 845 (7th Cir. 2001); *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999). Deliberate indifference has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the health care provider must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000).

The court will assume for purposes of this motion that the plaintiff's edema amounted to a "serious" medical need. Under the Seventh Circuit's standard,

> A "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. . . . [Indications of a serious medical need include] the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). For purposes of the motion, the court will accept as true that the plaintiff's legs and feet became swollen to the point of painful dryness, bleeding and cracking even after only relatively brief delays in receiving medicated cream. In ruling on a motion for summary judgment, the court cannot weigh the affidavits or the credibility of the parties. *Castillo v. United States*, 34 F.3d 443, 445 (7th Cir. 1994). The plaintiff describes an arguably serious medical condition.

Nevertheless, the plaintiff's claim fails on the second prong of the *Gamble* test. Any deliberate indifference analysis requires the court to consider the totality of the care provided. *See Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999); *Gutierrez*, 111 F.3d at 1374-75. Here, the record reflects fairly comprehensive medical treatment, notwithstanding any minor and occasional lapses in receiving drugs and creams. Although deliberate indifference to a serious medical need can be manifested by "woefully inadequate action" as well as by no action at all, *see Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999), the record in the case at bar suggests that the plaintiff received constitutionally acceptable medical treatment.

But in deciding defendant Zaruba's motion for summary judgment, the court need not determine whether the plaintiff received constitutionally adequate care. The plaintiff has adduced no evidence suggesting the Sheriff's direct, personal involvement, as required by *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The record contains no evidence that the occasional denial of Eucerin cream–the thrust of the complaint–occurred at Zaruba's direction or with his knowledge and consent. *Id.* Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted).

The mere fact that Zaruba is the DuPage County Sheriff is insufficient to establish liability, as the doctrine of *respondeat superior* (blanket supervisory liability) does not apply to actions filed under 42 U.S.C. § 1983. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Section 1983 does not create collective or vicarious responsibility. *Id.* To be held liable under 42 U.S.C. § 1983, supervisors "must know about the conduct and facilitate it, approve it, condone it, or turn

a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Id.* In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery. *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003). As a general rule, prison administrators may reasonably rely on the expertise of the medical professionals who are treating the inmate claiming deliberate indifference. *See, e.g., Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006). In this case, any suggestion that Zaruba limited medical supplies out of cost concerns is based entirely on hearsay.

In short, because the record does not support a finding that Zaruba was personally involved in–or even aware of–the alleged circumstances giving rise to the complaint, Zaruba must be dismissed as a defendant in this matter.

IT IS THEREFORE ORDERED that defendant Zaruba's motion for summary judgment [#42] is granted. At the close of the case, the clerk is directed to enter judgment in favor of defendant Zaruba pursuant to Fed. R. Civ. P. 56. Zaruba is terminated as a defendant; the plaintiff may proceed only against Dr. Guzman.

Enter: /s/ Wm. J. Hibbler
WILLIAM J. HIBBLER
United States District Judge

Date: 5/14/07

10