UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| DANIEL McCARTHY, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 05 C 4321 |
|  | ) |  |
| SHERIFF JOHN ZARUBA, et al. | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MEMORANDUM OPINION AND ORDER

The plaintiff, a former inmate at the DuPage County Jail, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, the sheriff and a staff physician at the jail, violated the plaintiff's constitutional rights by acting with deliberate indifference to his serious medical needs. More specifically, the plaintiff alleges that he was repeatedly denied medicated cream for edema of his lower legs and feet, a complication of his congestive heart failure.

By Memorandum Opinion and Order of May 14, 2007, the court granted summary judgment in favor of defendant Zaruba. Defendant Guzman has moved for reconsideration of that order, clarifying that the motion was filed by **both** defendants, and not just Zaruba. However, for the reasons stated in this order, the motion is denied as to Guzman.

## SUMMARY JUDGMENT STANDARDS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Vision Church v. Village of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). In determining whether factual issues exist, the court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000).

## FACTS

For the reasons set forth in the court's prior Memorandum Opinion and Order, *see* pp. 2-3, the court accepts the following facts as true for purposes of the defendants' motion for summary judgment:

The plaintiff was incarcerated at the DuPage County Jail on two occasions during the time period in question. (Defendant's Exhibit B, Deposition of Daniel McCarthy, at pp. 8-9.) The plaintiff was held at the jail from October 29, 2003, through November 21, 2003, and again from December 6, 2003, until on or about October 7, 2004. (*Id.*)

During his medical screening on the date the plaintiff was first booked, he reported to officials that he suffered from congestive heart failure and was taking multiple medications. (*Id.*, pp. 12-13.) A day or two later, the plaintiff was placed in the jail's medical wing. (*Id.*, p. 15.) The plaintiff remained in the medical pod for the rest of his first incarceration. (*Id.*, p. 23.)

For the first two or three days of his first incarceration, the plaintiff received no medication. (*Id.*, pp. 20, 21, 22.) On November 3, 2003, the jail medical staff contacted the plaintiff's pharmacist and verified his prescriptions for Accupril, Aldactone, Bumex or Bumetadine, Synthroid, and Digitek. (Defendant's Exhibit E, "Intervention Notes.") The plaintiff received his prescribed medications (or substitute medicines) from that day forward for the following three weeks.

2

(Plaintiff's Deposition, pp. 17-19.) During that three-week period, the plaintiff was seen by medical professionals "regularly, "daily." (*Id.* at p. 24.) From what he could recall, "they were taking me out at one time every day and going down to see the doctor for one reason or another. They were looking at me pretty close." (*Id.*)

The plaintiff was released from custody on or about November 21, 2003.

The plaintiff returned to the DuPage County Jail for the second time on December 6, 2003. (Plaintiff's Deposition, p. 30.) He was examined by medical staff within two days of his arrival and he was placed, once again, in the jail's medical unit. (*Id.*, p. 37.) The plaintiff was housed in the medical unit for the first six months of his second, ten-month incarceration at the jail. (*Id.*, pp. 37, 38.) During those six months, he saw nurses daily and other members of the medical staff "at least once a month . . . sometimes more," if he requested to see a physician. (*Id.* pp. 38-39.)

According to the plaintiff, one of the complications of congestive failure is edema (swelling) of his lower legs and feet. (*Id.*, p. 26.) Prior to his incarceration, the plaintiff took Lasix and/or Bumetanide (diuretics) to combat the condition. (*Id.*, pp. 19, 20, 53.) [Diuretics increase urination and decrease water retention.]

Within one to three days of his arrival at the jail, the plaintiff had a consultation with Dr. Guzman at the jail. (*Id.*, p. 52.) When the plaintiff showed Guzman his swollen legs and discolored skin, Guzman "made a prescription right then to get me some medication for that." (*Id.*, p. 53.) Within a week, the plaintiff's leg was "quite a bit better." (*Id.*, p. 57.) Dr. Guzman prescribed Eucerin (a medicated skin cream) for the plaintiff's legs at the next appointment. (*Id.*, p. 55.)

After the first two weeks of the plaintiff's incarceration, his oral medications were administered "pretty steady . . . and if they ran out . . . I usually generally had it the next day." (*Id.*,

3

p. 59.) On a routine and regular basis from December 6, 2003, until about October 7, 2004, the plaintiff received medications that included Neosporin, Bumex, Potassium Chloride, Lasix, Triamcinolone cream, Aldactone, Digoxin, Synthroid, ASA EC, Coreg, Lisinopril, Eucerin cream, Beneryl, triple antiseptic ointment, Motrin, Bacitracin, Keflex, Sedactone, and hydrocortisone cream. The plaintiff's blood pressure was monitored regularly. The plaintiff was treated with large bandage dressings on at least three occasions. (Defendant's Exhibit F, Medication Administration Record for Daniel McCarthy.) The plaintiff concedes that, "With the Bumetanide, with any of the medications, being off it for a day or two isn't that big of a deal. It's when you're off it for three or four days or a week that it starts to be, you start to notice the effects of it." (Plaintiff's Deposition, p. 59.) But there were no long-term denials of oral medications. (*Id.*, p. 60.) The plaintiff took issue only with lapses in receiving topical ointments for his edema. (*Id.*)

When the plaintiff complained that the quantity of Eucerin cream given to him once a day was insufficient, he was furnished Eucerin twice a day. (*Id.*, p. 61.)

From about February 28, 2004, until March 6, 2004 (about a week), the plaintiff received no Eucerin cream. Some staffers told him that the facility was "out" of the cream and that it been re-ordered; others told him that his prescription had lapsed and that it was too expensive to re-order. (*Id.*, pp. 61-64.) When the plaintiff met with Dr. Guzman on March 6th, Guzman allegedly explained, "Look, we've done all we can. This is expensive stuff and we've done all we can. It's a problem you're going to have to live with.... It's a problem that can't be cured." (*Id.*, pp. 64-65.)

Guzman's refusal to prescribe more Eucerin cream prompted the plaintiff to send a letter to jail administrators. (*Id.*, p. 66.) In response to the letter, which was treated as a grievance, the plaintiff began receiving Eucerin cream again two or three days later. (*Id.*, p. 67.) At first, he was

4

given a cup of cream twice a day, then the medical staff began giving him the whole container. (*Id.*) And they were "pretty good" about re-ordering the cream when the plaintiff informed them that he needed more, although sometimes he would have to wait a week or so. (*Id.*, p. 68.) When the facility had no Eucerin in stock, they would sometimes give him antibiotic ointments instead. (*Id.*)

At the end of August 2004, the facility once again stopped providing Eucerin cream. (*Id.*, p. 69.) After about a week or two of going without the medicated cream, the plaintiff's legs began to get "really raw," cracked and dry and bleeding. (*Id.*, pp. 70-71.)

On an unspecified date in September, the plaintiff showed his leg to a lieutenant. (*Id.*, pp. 74-75.) The lieutenant summoned a nurse, who examined his leg and commented that she did not understand why he was not getting his medication. (*Id.*, p. 75.) The nurse provided the plaintiff with hydrocortisone cream and promised to investigate the matter. (*Id.*)

The plaintiff filed another grievance regarding the denial of Eucerin cream. (*Id.*, p. 76.) A jail official met with the plaintiff and, shortly thereafter, he began receiving the medication once again. (*Id.*)

## DISCUSSION

Viewing the record in the light most favorable to the plaintiff, a reasonable person could conclude that defendant Guzman acted with deliberate indifference to the plaintiff's serious medical needs during his second stint at the DuPage County Jail. Accordingly, the motion for summary judgment is denied as to Guzman.

It is well established that the Due Process Clause prohibits deliberate indifference to the serious medical needs of a pretrial detainee. *Chapman v. Keltner*, 241 F. 3d 842, 845 (7th Cir. 2001); *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999). Deliberate indifference has both an objective and

a subjective element: the inmate must have an objectively serious medical condition, and the health care provider must be subjectively aware of and consciously disregard the inmate's medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000).

The plaintiff has clarified that the only issue for which he seeks damages is the lapses in receiving topical ointments for his edema. (Plaintiff's Deposition, p. 60.) The court will assume for purposes of this motion that the plaintiff's edema amounted to a "serious" medical need. Under the Seventh Circuit's standard,

> A "serious" medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. . . . [Indications of a serious medical need include] the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). For purposes of the motion, the court will accept as true that the plaintiff's legs and feet became swollen and painfully dry, bleeding and cracking even after only relatively brief delays in receiving medicated cream. In ruling on a motion for summary judgment, the court cannot weigh the affidavits or the credibility of the parties. *Castillo v. United States*, 34 F.3d 443, 445 (7th Cir. 1994). The plaintiff describes an arguably serious medical condition.

The plaintiff has no cause of action against Guzman in connection with his first period of incarceration at the DuPage County Jail. The plaintiff admits that he was housed in the jail's medical wing throughout his first confinement, that he began receiving all his prescribed (or substitute) medications within a few days of his arrival, and that he saw health care professionals

"regularly, daily." The plaintiff alleges no deprivation and no injury. The record does not support an inference of deliberate indifference with respect to the plaintiff's first stay at the jail.

However, the plaintiff has articulated a colorable claim regarding the repeated denial of medicated cream during his second stretch at the jail. It should be noted that the record puts to rest any notion that the plaintiff received inadequate care for his congestive heart failure. As discussed in the court's prior order at p. 7, "the record reflects fairly comprehensive medical treatment, notwithstanding any minor and occasional lapses in receiving drugs and creams." Any deliberate indifference analysis requires the court to consider the totality of the care provided. *See Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999); *Gutierrez*, 111 F.3d at 1374-75. The plaintiff concedes that missing the medications for a few days sometimes "isn't that big a deal." The plaintiff specifically takes issue only with the periodic denial of topical ointments for his edema.

On multiple occasions, the plaintiff contends, he went without medicated cream for long enough periods of time that his legs became "raw," dry, cracked and bloody. He additionally maintains that Guzman would tell him that he would simply "have to live with" the problem, taking action only when grievances prompted the jail administration to intervene. Viewing the facts in the light most favorable to the plaintiff, a reasonable person could conclude that Guzman was aware of and consciously disregarded the plaintiff's serious medical need. *Farmer*, 511 U.S. at 837 (1994); *Estelle*, 429 U.S. at 103-04 (1976); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). The subjective element of deliberate indifference encompasses conduct such as the refusal to treat a prisoner's pain, *Jones v. Simek*, 193 F.3d 485, 490 (7th Cir. 1999), the refusal to provide pain medication prescribed by a doctor, *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999), or

7

erroneous treatment based on a substantial departure from accepted medical judgment, practice, or standards. *Sherrod*, 223 F.3d at 611; *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

In short, the plaintiff has satisfied both the objective and subjective prongs of the *Estelle v. Gamble* test: he has shown that he had an arguably serious medical need, and that Guzman acted with deliberate indifference to that need. While a more fully developed record may belie the plaintiff's claims, Guzman has failed to establish that he is entitled to judgment as a matter of law.

IT IS THEREFORE ORDERED that defendant Guzman's motion for reconsideration [#52] is denied. The plaintiff may pursue his claim that Guzman repeatedly denied him needed medicated cream for his edema during the plaintiff's second stint at the jail.

Enter: __William J. Hibbler__
WILLIAM J. HIBBLER
United States District Judge

Date: 6/22/07

6/22/07